## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
THE GOOGLE ACCOUNT

MJ No. 23-MJ-197-B

THAT IS STORED AT PREMISES
CONTROLLED BY GOOGLE LLC

Filed Under Seal

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Special Agent Benjamin Finney, being first duly sworn, hereby depose and state as
follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Superior
Court Rules of Criminal Procedure for a search warrant for information associated with

(hereafter "THE SUBJECT ACCOUNT") that is stored at
premises controlled by Google LLC (hereafter "Google"), an email and cloud storage provider
headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043. The information to be
searched is described in the following paragraphs and in Attachment A. This affidavit is made in
support of an application for a search warrant under Rule 41 of the Federal Rules of Criminal
Procedure to require Google to disclose to the government copies of the information (including
the content of communications) further described in Section I of Attachment B. Upon receipt of
the information described in Section I of Attachment B, government authorized persons will
review that information to locate the items described in Section II of Attachment B.

2.      Your affiant, Special Agent Benjamin Finney, is a certified Federal Agent
currently employed by the Bureau of Alcohol, Tobacco, Firearms, and Explosives of the United

States Department of Justice (hereinafter "ATF"), having been so employed since October 2019. I am a graduate of the Federal Law Enforcement Training Center and the ATF Special Agent Basic Training Academy in Glynco, GA. As such, my primary duties are to investigate violations of Title 18, Title 21, and Title 26 of the United States Code. In this capacity, I received specialized training regarding the investigation and enforcement of Federal criminal violations. Your affiant is an investigative law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 United States Code, and I am empowered by law to conduct investigations and to make arrests for the offenses enumerated in Section 2516 of Title 18 United States Code. Your affiant has received training and experience in interviewing and interrogation techniques, surveillance techniques, arrest procedures, search and seizure, and asset forfeiture. Your affiant has also been involved in firearms, explosives, tobacco, gang, money laundering, and drug investigations, including the possession with intent to distribute and distribution of controlled substances, and conspiracies and offenses.

3.     Prior to my employment with the ATF, I was a full-time, certified Peace Officer with the Gwinnett County Police Department in Lawrenceville, GA, having been employed with that agency for approximately 13 years. During my employment there, I received various levels of training regarding the investigation, enforcement, and prosecution of criminal violations of Georgia law. I testified on numerous occasions in state and superior courts in a variety of proceedings. My testimony in those proceedings contributed to the indictment and successful prosecution of numerous individuals for various state criminal violations, including, but not limited to armed robbery, hijacking a motor vehicle, and aggravated assault. In addition, I applied for and obtained state search and seizure warrants; obtained arrest warrants; and have participated in numerous arrests of individuals charged with state criminal violations.

2

4.     From my background, I know that individuals engaged in firearms trafficking, drug trafficking, money laundering, and/or other criminal conspiracies frequently retain records of their transactions within their residence, place of business, rented storage units, vehicles, or other places under their control.  These records may be in the form of written notes and correspondence, receipts, negotiated instruments, loans, bank statements, and other records.  Records of this kind are also often stored in electronic devices, on digital media or in a Google type service.

5.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.  All dates, locations, and amounts referenced in my affidavit are approximations.

6.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1958 (Murder for Hire) and a conspiracy to commit the same, have been committed by **Darrius Dwayne ROWSER, Jr.** (hereinafter referred to as **ROWSER**) and others. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

### JURISDICTION

7.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A). Specifically, the United States District Court for the Southern District of Alabama is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

3

**PROBABLE CAUSE**

6

10

12

13

## BACKGROUND CONCERNING GOOGLE[1]

31.     Based upon my training and experience, and information acquired from other law enforcement officials with technical expertise, I have learned the following information. Google provides a variety of on-line services, including electronic mail ("email") access, to the public. Google allows subscribers to obtain email accounts at the domain name gmail.com, like the email account listed in Attachment A.  Subscribers obtain an account by registering with Google. During the registration process, Google asks subscribers to provide basic personal information. Google maintains information about the mobile devices associated with the user's Google account. This includes the make, model, and unique serial numbers of all linked devices. Google also maintains information about their customers including: the user's primary email addresses; the user's secondary email addresses for account password recovery; applications, websites, and services that are allowed to access the user's Google account or use the user's Google account as a password login; and account login activity, such as the geographic area where the user logged into the account, the type of internet browser and device the user was using, and the internet protocol (IP) address from which they logged in. The IP address is roughly analogous to a telephone number assigned to a computer by an internet service provider. The IP address can be

---

[1] The information in this section is based on information published by Google on its public websites, including, but not limited to, the following webpages:  the "Google legal policy and products" page available to registered law enforcement at lers.google.com; product pages on support.google.com; or product pages on about.google.com.

resolved back to a physical address, such as a residence or business with Wi-Fi access or residential cable internet. I believe this information will assist in the investigation by identifying previously unknown email accounts, previously unknown devices utilized by the suspect, and location history information tending to show the movements of the suspect and his mobile device(s).

32.     Google users can enroll Android devices with an associated Google account into a device backup service. This backup service duplicates some of the information stored on the device in the event the user loses their device, or it becomes otherwise inoperable. Device backup data is limited to data from applications stored on the device and all history, including dialed calls, received calls, missed calls, and device settings. The backup files are named with the device's manufacturer and model number in the user's Google Drive service.

33.     A Google subscriber can also store with the provider (in addition to emails) files, such as address books, favorite locations, contact or buddy lists, calendar data, pictures and video (other than ones attached to emails), and other files on servers maintained and/or owned by Google. In my training and experience, evidence of who was using an email account may be found in address books, contact or buddy lists, emails in the account, and attachments to emails, including pictures and files, as well as location history. I believe this information could show the suspect's location at the time the above-mentioned crimes were committed.

34.     Google Maps is a web service and application which allows users to search for places and routes to navigate using public transportation, vehicle, bicycle, or foot. Users can label or designate specific places in Google, such as home or work. Google maps also records commute routes and commute settings based on recorded patterns, such as date and time, origin

15

and destination, and route traveled. I believe this information would allow law enforcement to show patterns of travel, which may corroborate or disprove other evidence in this case.

35.     Chrome is an internet browser developed and distributed by Google. The Chrome browser is tightly integrated with other Google products and is the default browser installed on the Android operating system. The Chrome browser collects and stores information which is transmitted to Google and retained by the company. This information includes: autofill and auto-populate data from prior searches, bookmarked webpages, browser history showing "searched for" words, extensions and add-ons which are developed by Google and third parties to bring custom features to the browser, search engines used, and sync settings so the user can have the previously listed features across multiple devices. I believe this information would show the suspect's internet activity in the days following the murder and armed robberies, including internet searches for news coverage of the crimes.

36.     In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit card or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

37.     In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This

16

information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account.

38.    In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

39.    As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling law enforcement to establish and prove each element, or alternatively, to exclude the innocent from further suspicion.  In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, email communications, contact lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time.  Further, information maintained by the email provider can show how and when the account was accessed

17

or used. For example, as described above, email providers typically log the Internet Protocol (IP) addresses from which users access the email account, along with the time and date of that access. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via email). Stored electronic data may also provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

40.     Searching for the evidence described in this warrant application may require a range of data analysis techniques. In some cases, law enforcement officers and computer analysts may be able to conduct carefully targeted searches to locate evidence without needing to carry out a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrant. Numerous types of user information and metadata stored on a cellphone are not susceptible to "word search" or similar forensic techniques, including but not limited to, images, audio and video recordings, and proximate GPS locations. In addition, the complex interrelatedness of cell-phone data may undermine the efficacy of narrow search techniques based on the type, location, or date of information. Indeed, the vast array of apps now available on cell

18

phones makes it extremely hard to determine the exact form and organization of user information and metadata prior to conducting a search. Finally, criminals can mislabel, misspell, or hide information; encode communications to avoid using key words; attempt to delete information to evade detection; or take other steps designed to frustrate law enforcement searches for information.

41.     Accordingly, law enforcement officials or other analysts with appropriate expertise may need to conduct more extensive searches not obviously related to the evidence described in this warrant application or perusing all stored information briefly to determine whether it falls within the scope of the warrant. In light of these difficulties, ATF and its partners intend to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described in this warrant application.

42.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Google. Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## CONCLUSION

43.     Based on the forgoing, I request that the Court issue the proposed search warrant.

44.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Google. Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

19

Respectfully submitted,

*Benjamin Finney*

Benjamin Finney
Special Agent
Bureau of Alcohol, Tobacco, Firearms &
Explosives

THE ABOVE AGENT HAS ATTESTED
TO THIS AFFIDAVIT PURSUANT TO
FED. R. CRIM. P. 4.1(b)(2)(B) THIS _17th_
DAY OF AUGUST 2023.

JUDGE SONJA F. BIVINS
UNITED STATES MAGISTRATE JUDGE



Certified to be a true and
correct copy of the original.
Charles R. Diard, Jr.
U.S. District Court
Southern District of Alabama
By: *Shannon Davison*
Deputy Clerk
Date: August 17, 2023

20

## ATTACHMENT A

**Property to Be Searched**

## **ATTACHMENT B**

### **Particular Things to be Seized**

**I.**   **Information to be disclosed by Google LLC ("Google")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Google, Google is required to disclose to the government for each account or identifier listed in Attachment A the following information **September 20, 2022, until January 4, 2023**, unless otherwise indicated:

a.   All business records and subscriber information, in any form kept, pertaining to the Account, including:

   1.   Names (including subscriber names, user names, and screen names);

   2.   Addresses (including mailing addresses, residential addresses, business addresses, and email addresses, including alternate and recovery email addresses);

   3.   Telephone numbers, including SMS recovery and alternate sign-in numbers;

   4.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions, including log-in IP addresses;

   5.   Telephone or instrument numbers or other subscriber numbers or identities, including any temporarily assigned network address, SMS recovery numbers, Google Voice numbers, and alternate sign-in numbers;

   6.   Length of service (including start date and creation IP) and types of service utilized;

   7.   Means and source of payment (including any credit card or bank account number); and

   8.   Change history.

b.  All device information associated with the Account, including but not limited to, manufacture names, model numbers, serial number, media access control (MAC) addresses, international mobile equipment identifier (IMEI) numbers, FCC ID numbers, Android IDs, and telephone numbers.

c.  Records of user activity for each connection made to or from the Account, including, for all Google services, the date, time, length, and method of connection, data transfer volume, user names, source and destination IP address, name of accessed Google service, and all activity logs.

d.  All Backup files, stored in Google Drive or elsewhere, including associated data such as application data call history, device settings, contacts, calendar information, short message system files consisting of data, time, sender, receiver, and message content, photos, and videos.

e.  All contacts stored by Google, including name, all contact phone numbers, emails, social network links, and images.

f.  All Chrome data, including autofill, bookmarks, browser history, extensions, dictionary, search engine, and sync settings.

g.  All email messages, including Gmail messages, and by way of example and not limitation, inbox messages, whether read or unread, sent mail, saved drafts, chat histories, and emails in the trash folder. Such messages will include all information such as the date, time, internet protocol (IP) address routing information, sender, receiver, subject line, and any other parties sent the same electronic mail through the "cc" (carbon copy) of the "bcc" (blind carbon copy), the message context or body, and all attached files.

h.  All images, including Google photos, photos, graphic files, video files, and other medial files stored in the Google Photo service.

i.  All Google Maps data, including commute routes, commute settings, and labeled places.

j.  Google Location History/Google Timeline data for any devices associated with the Account to include, but not limited to, all location data whether derived from Global Positioning System (GPS), cell site/cell tower triangulation, multilateration, precision measurement information such as timing advance or per call measurement data, Wi-Fi location, Bluetooth, or device sensors, including accelerometer, barometer, gravity, magnetic field, orientation, or proximity. Such data shall include the GPS coordinates and the dates and times of all location recordings from the period of **September 20, 2022, until January 4, 2023**;

k.  All applications downloaded, installed, and/or purchased by the Account.

2

l.    All search history and queries, including by way of example, but not limited to, World Wide Web (web) browsing, images, news, shopping, ads, videos, maps, travel, and finance, whether performed in private browsing, incognito, anonymous or secret mode, all device activity including application use, social media use, device phone functions such as calling and/or text messaging activity, email activity including read, sent and received emails, and the dates and times of searches made and applications used.

m.    All call detailed records, connection records, short message system (SMS) or multimedia message system (MMS) messages, and voicemail messages sent by or from the Google Voice account associated with the Account.

n.    All Google documents, including by way of example, but not limited to, Docs (a web-based word processing application) and Sheets (a web-based spreadsheet program). Documents will include all files whether created, shared, or downloaded.

o.    All YouTube videos, including by way of example, but not limited to, user uploaded videos, channel subscriptions, searched videos, saved favorite videos, liked videos, or shared videos.

p.    Type of service(s) utilized.

q.    All records or other information stored by an individual using the Account, including address books, contact and "buddy" lists, calendar data, pictures, and files.

r.    All location information pertaining to the Account or linked to the Account from the time period of **Account Creation up until January 4, 2023**;

s.    All records pertaining to communications between the Provider and any person regarding the Account, including contacts with support services and records of actions taken.

Google is hereby ordered to disclose the above information to the government within **14 DAYS** of the issuance of this warrant.

3

II.  **Information to be seized by the government**

All information described above in Section I that constitutes fruits, contraband, evidence, and/or instrumentalities of violations of 18 U.S.C. § 1958 (Murder for Hire), those violations involving **Darrius ROWSER** and occurring after **September 20, 2022**, including, for the Account or identifier listed on Attachment A, information pertaining to the following matters:

a. Conspiratorial activity committed on behalf of **ROWSER** and generally including Communications between **ROWSER** and co-conspirators, preparatory steps taken in furtherance of the Murder for Hire conspiracy, witness tampering, and crimes of violence;

b. Planned criminal activity on behalf of the Murder for Hire, generally, including communications, planning, and scheduling;

c. Firearms and other weapons used in connection with the Murder for Hire conspiracy;

d. Sources of firearms;

e. Vehicles and tattoos;

f. Plans or orders to purchase firearms for members of the Murder for Hire conspiracy;

g. Efforts to evade, hinder, obstruct, and/or prevent law enforcement from appending members and/or associates of members of the Murder for Hire conspiracy;

h. Evidence indicating how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

i. Evidence of who used, owned, or controlled the Account at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, search history, user profiles, "chat", instant messaging logs, photographs, and correspondence;

j. Records of or information about Internet Protocol (IP) addresses used by the Account;

k. Records of or information about the Account's Internet activity, including firewall logs, caches, browser history and cookies, and search terms that the user entered into the Google search engine;

4

l.     Evidence indicating how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

m.    Evidence of the times the Account was used;

n.    Evidence indicating the Account owner's state of mind as it relates to the crime under investigation;

o.    The identity of the person(s) who created or used the Account, including records that help reveal the whereabouts of such person(s);

p.    The identity of the person(s) who communicated with the Account about matters relating to the conspiracy to commit Murder for Hire, including records that help reveal their whereabouts; and

q.    Contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form. The term "communication" includes text messages, instant messages, direct messages, voice messages, emails, notes, posts, writings, and any other form of communication, including information transmitted via mobile applications.

5